UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

EAGLE PAPER INTERNATIONAL,
INC., a Virginia corporation,

       Plaintiff,

v.                                                  ACTION NO. 2:07cv160

EXPOLINK, LTD., an Israeli limited
liability company,

MICHAEL MAMLIN and
ARIE SASSON,

       Defendants.

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference entered October 12, 2007.

This case was referred for a report and recommendation on a motion to dismiss filed by Defendants Expolink, Ltd., ("Expolink"), Michael Mamlin ("Mamlin"), and Arie Sasson ("Sasson") [Document No. 8]. For the reasons set forth below, the Court recommends the motion to dismiss the complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2), Federal Rule of Civil Procedure 12(b)(6), and the doctrine of forum non conveniens be GRANTED in part and DENIED in part.

## I. FACTUAL AND PROCEDURAL HISTORY

This matter relates to a series of business transactions between two companies that broker bulk paper internationally. Eagle Paper International, Inc. ("Eagle") is a Virginia corporation with its principal place of business in Virginia Beach, Virginia. Compl. ¶ 2. The company maintains a number of international offices, including an office in Ramat-Gan, Israel. Geron Affidavit, Oct. 1, 2007, ¶¶ 4, 9 ("Geron Aff."). Eagle's President, Jacob Geron ("Geron"), is a citizen of Israel with residences in both Israel, Mamlin Affidavit, Sept. 17, 2007, ¶ 2 ("Mamlin Aff. 1"), and the Commonwealth of Virginia, Geron Aff. ¶ 2. Expolink is an Israeli company with its principal place of business in Ashkelon, Israel. Compl. ¶ 3. Mamlin is the company's President and sole shareholder, Mamlin Aff. 1 ¶ 2, and Sasson is employed by Expolink as its International Trade Representative, Sasson Affidavit, Sept. 17, 2007, ¶ 2 ("Sasson Aff. 1"), Sasson Affidavit, Oct. 9, 2007, ¶¶ 2,3 ("Sasson Aff. 2"). Both Mamlin and Sasson are citizens and residents of Israel. Mamlin Aff. 1 ¶ 2, Sasson Aff. 1 ¶ 1.

In late 2003 or early 2004, the parties first discussed the possibility of entering into a business relationship whereby Expolink would serve as Eagle's exclusive agent in a number of Eastern European nations, such as the Ukraine, Estonia, Moldova, and Belarus, procuring sales of Eagle's products in those countries and obtaining paper supplies from manufacturers with production capacity in those countries. Compl. ¶¶ 8-10. The parties' first face to face conversation through their principals Geron and Mamlin took place at Eagle's office in Ramat-Gan. Mamlin Affidavit, Oct. 9, 2007, ¶¶ 3,4 ("Mamlin Aff. 2"). Shortly after their initial meeting, Eagle and Expolink began transacting business. Compl. ¶ 11.

On or about May 2005, Geron proposed that the parties memorialize the terms of their

business relationship in writing. Mamlin Aff. 2 ¶ 5. He then drafted an agreement which the parties met to discuss in Israel on May 26, 2005. Id. On June 8, 2005, Mamlin signed the agreement on behalf of Expolink and faxed it to Eagle's office in Israel. Id. While purportedly still in Israel, Geron signed the agreement on behalf of Eagle on June 18, 2005. Id. ¶ 6. The signed agreement was faxed from Eagle's office in Israel to Expolink's office in Israel on July 26, 2005. Id. ¶ 5. This agreement was later transmitted to Eagle's office in Virginia from outside the United States. Geron Aff. ¶ 14.

During the course of the parties' business transactions, Expolink employee Veronika Korf ("Korf") would place orders for products with Eagle's office in Israel. Korf Affidavit, Oct. 9, 2007, ¶¶ 5-7 ("Korf Aff."). Korf selected products from lists of inventory provided to her by Eagle's Israeli employee "Hagit." Id. ¶ 5. Hagit would confirm Expolink's orders by sending Korf a "Notification of Shipment" and later a "Bill of Lading." Id. ¶¶ 8,9. While Expolink did not dictate the source of Eagle products, Mamlin Aff. 2 ¶ 14, it often accepted shipments from United States ports, including the Port of Norfolk, Geron Aff. ¶ 19. Eagle shipped all products purchased by Expolink at its own expense. Mamlin Aff. 2 ¶¶ 15,16. Upon arrival of a shipment and receipt of an invoice from Eagle, Korf would send payment from Expolink's bank in Israel to Eagle's bank in Richmond, Virginia. Korf Aff. ¶ 10, Geron Aff. ¶¶ 6,15. Concurrently, Eagle, through its employee Hagit, would place similar orders with Korf for products from Expolink's Eastern European suppliers. Mamlin Aff. 2 ¶ 10.

Geron alleges that Mamlin, Sasson, and Korf frequently placed telephone calls and sent electronic mail ("e-mail") messages to Eagle's offices in Virginia Beach to conduct this business. Geron Aff. ¶¶ 16-18, 20- 23. Mamlin and Sasson disagree, claiming instead that any telephone calls

3

were placed to Eagle's office in Israel or directly to Geron's phone. Mamlin Aff. 1 ¶ 6, Sasson Aff. 1 ¶ 5. Korf also states that she did not call Eagle's Virginia Beach office. Korf Aff. ¶ 11. Instead, she maintains that all her calls were local and conducted in Hebrew. Id. ¶¶ 6, 11. Korf further claims that any emails sent to Virginia Beach employees were in response to technical shipping problems and were sent to email addresses appearing in previous correspondence sent by Eagle. Id. Though the parties did discuss business face to face on a number of occasions, neither Mamlin or Sasson ever traveled to the United States to transact business. Mamlin Aff. 1 ¶ 6, Sasson Aff. 1 ¶ 3.

On April 3, 2007, Eagle filed its ten-count complaint, against Expolink and Mamlin and Sasson individually, alleging breaches of contract, breaches of fiduciary duty, fraud, tortious interference with business expectancy, prospective economic advantage, and statutory conspiracy [Doc No. 1]. In particular, Eagle claims that Expolink breached its obligations under their agreement by failing to pay for goods of which it took possession, and failing to provide credit for shipments of inferior quality product. Compl. ¶¶ 26-28, 35-38. Eagle also contends that Expolink, Mamlin and Sasson – the latter two acting in furtherance of personal pecuniary interests – used Eagle's reputation and purchasing power to establish relationships with paper suppliers in Moldova and Belarus, then diverted these supplies of paper to their own benefit. Id. ¶¶ 15-23, 24-34. On September 7, 2007, this Court granted Defendants' motion for an extension of time to file responsive pleadings [Doc No. 7]. And on September 18, 2007, Defendants filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), or in the alternative, seeking dismissal under the doctrine of forum non conveniens [Doc. Nos. 8, 9]. The Court addresses each of these motions in turn.

## II. <u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>

When a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the ultimate burden to prove by a preponderance of the evidence that the exercise of personal jurisdiction is proper as to each defendant. <u>In re Celotex Corp.</u>, 124 F.3d 619, 628 (4th Cir. 1997). However, a plaintiff need only make a prima facie showing of jurisdiction when, as here, the court decides a Rule 12(b)(2) motion without conducting an evidentiary hearing or deferring its ruling until the receipt of evidence at trial.[1] <u>Id.</u> To determine whether the requisite showing has been made, the court must draw all reasonable inferences and resolve all factual disputes in the plaintiff's favor. <u>Mylan Laboratories, Inc. v. Akzo, N.V.</u>, 2 F.3d 56, 60-62 (4th Cir. 1993). Moreover, it is not required to look solely to the plaintiff's proof in drawing these inferences. <u>Id.</u>

Whether personal jurisdiction is proper involves a two-prong inquiry. First, the court must consider whether the forum's long-arm statute authorizes the exercise of jurisdiction. <u>Id.</u> at 60. Second, if the requirements of the long-arm statute are met, the court must then determine whether the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. <u>Id.</u> Because Virginia's long-arm statute extends personal jurisdiction to the limits of due process, the state law and due process analyses are identical. <u>Federal Ins. Co. v. Lake Shore, Inc.</u>, 886 F.2d 654, 657 n.2 (4th Cir. 1989); <u>see also</u> <u>Christian Broadcasting Network, Inc. v. Busch</u>, No. 2:05cv558, 2006 U.S. Dist. LEXIS 1868, at *6-7 (E.D.Va. Jan. 9, 2006). That is, this Court must only determine whether the Defendants' activities in Virginia are such that it may exercise in

---

[1] Even if a plaintiff makes the requisite showing, the matter is not settled, as the plaintiff must still prove at trial or at an evidentiary hearing that the assertion of personal jurisdiction over the defendant is proper by a preponderance of the evidence. <u>New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.</u>, 416 F.3d 290, 294 n.5 (4th Cir. 2005).

5

personam jurisdiction without violating due process.  Id.

The Due Process Clause of the United States Constitution requires that a defendant have sufficient minimum contacts such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal citations omitted).  Depending on the nature of the defendant's contacts with the forum, courts may exercise either general or specific jurisdiction.  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002).  General jurisdiction is authorized when a defendant has "continuous and systemic" contacts with the forum.  Helicopteros Nacionales, 466 U.S. at 414.  Because these contacts are extensive, the suit need not "aris[e] out of or relat[e] to the defendant's contacts with the forum."  Id. at 411 n.9.  If, however, insufficient contacts exist to justify general jurisdiction, specific jurisdiction is permissible where a defendant's contacts with the forum are also the basis for the suit.  Id. at 411 n.8.  For a court to exercise specific jurisdiction over a defendant, it must consider (1) the extent that the defendant "purposefully availed" himself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.  ALS Scan, 293 F.3d at 712.

Here, Eagle claims Defendants engaged in extensive activity in Virginia over the course of three years including frequent telephone calls and e-mails to Eagle's office in Virginia, orders transmitted to Virginia, acceptance by Defendants of products shipped from Virginia, and hundreds of thousands of dollars' worth of payments made to Eagle in Virginia.  Moreover, Eagle argues that the parties' written agreement, which states that Eagle Paper International is located in Virginia

Beach, Virginia, demonstrates that Defendants' contacts were purposeful. This Court disagrees, finding instead that contact between Defendants and the Commonwealth of Virginia was not so purposeful as to warrant specific jurisdiction.

Expolink is an Israeli company, organized under the laws of Israel, which maintains no office, employees, or other presence in Virginia. While Expolink did execute a contract with a Virginia corporation, the mere existence of a contract does not establish the necessary contacts for due process. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79 (1985); Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127-28 (4th Cir. 1986). Of greater significance is the fact that the contract upon which this suit is based was proposed and written by Plaintiff, and was negotiated in part and signed by the parties in Israel.[2] See e.g., Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 451 (4th Cir. 2000) (finding no personal jurisdiction when the contractual relationship was initiated by the Plaintiffs); American Online, Inc. V Huang, 106 F. Supp. 2d 848, 856-57 (E.D.Va. 2000) (relying on the circumstances of the contracts' negotiation and execution to conclude that defendant did not purposefully direct its activities to Virginia). The contract did not specify that it would be governed by forum law. What's more, the contract principally contemplated activities by Expolink abroad. See Compl. ¶ 10 (The contract included a number of specific business undertakings, including: "(a) Expolink serving as Eagle's exclusive agent *in the Former Soviet Bloc States*, procuring sales for Eagle's products on a commission basis; (b) Expolink procuring for Eagle's sale to Eagle's existing customers paper products produced by

---

[2] It is immaterial, in this context, that the contract was later "transmitted" to Eagle's office in Virginia. See Superfos Invest., Ltd. v. Firstmiss Fertilizer, Inc., 774 F. Supp. 393, 398 (E.D. Va. 1991) (finding that a contract negotiated and signed outside the forum "and returned to Virginia once signed" did not satisfy minimum contacts).

7

a paper mill "Mold Carton" *located in Moldova*; (c) Expolink procuring for Eagle's sale to Eagle's existing customers paper from a mill *located in Belarus* (the "Dobrouch Mill"); (d) Expolink obtaining from a mill *in Russia* (the "Kama Mill") newsprint and other types of paper for sale by Eagle to Eagle's existing customers.") (emphasis added).

Although Expolink engaged in some activities in Virginia, the nature of the acts belie Eagle's claim that Expolink deliberately directed its activities at the forum. See Chung, 783 F.2d at 1127 ("The significant contacts considered [for purposes of personal jurisdiction] are those actually generated by the defendant."). For instance, Expolink placed orders with Eagle's office in Israel. But, Eagle internally transmitted those orders to its headquarters in Virginia. See Diamond Healthcare, 229 F.3d at 452 (recognizing that interactions between plaintiff's headquarters and its employees in the field who were affiliated with nonresident defendant constituted unilateral activity that did not create personal jurisdiction). Expolink accepted products shipped from Virginia. But, Eagle determined the source of the products and shipped them at its own expense.[3] Expolink sent payments to Eagle's bank in Richmond, Virginia. But, Eagle generated the invoices which directed how and where payments were to be made. See id. (concluding that defendant's monthly payments to Richmond amounted only to "attenuated contact" with Virginia).

Eagle also places heavy emphasis on the exchange of communications between the parties. However, it is well settled that mere telephone calls and electronic communications in furtherance

---

[3]It is important to note that Eagle does not manufacture its paper products. Instead, it brokers paper from paper mills around the world. Geron Aff. ¶¶ 4, 10. Thus, the source of Eagle's products varies, as does the ports from which its products are shipped. See, e.g., Geron Aff. ¶¶ 26, 27, 36, 37, 54, 65, 66, 71, 77 (acknowledging that Eagle has shipped products to Expolink from a number of ports including Norfolk, Savannah, New Orleans, Charleston, Chicago, Montreal, and Houston). Expolink then cannot be found to have purposefully directed its activities at the forum simply because on occasion Eagle's products traveled through Virginia.

of a transaction are insufficient to constitute purposeful activity. See Superfos Invest., Ltd. v. Firstmiss Fertilizer, Inc., 774 F. Supp. 393, 397-98 (E.D.Va. 1991) (concluding that letters, telephone calls and facsimile transmissions to Virginia corporation for purposes of transacting business did not constitute sufficient contact for in personam jurisdiction); Unidyne Corp. v. Aerolineas Argentinas, 590 F. Supp. 391, 396 (E.D.Va. 1984) (finding that telephone calls, telex messages and letters did not form a basis for personal jurisdiction); Consulting Engineers, Inc. v. Geometric Software Solutions and Structure Works LLC, No. 1:06cv956, 2007 U.S. Dist. LEXIS 25150, at *15 (E.D.Va. April 3, 2007) (holding that defendant's telephone calls and emails to plaintiff's Virginia office did not warrant personal jurisdiction).

It is apparent from the facts taken as a whole and viewed in favor of Plaintiff that Expolink did not purposefully avail itself of the privilege of conducting activities in Virginia. The parties' contract was initiated by Plaintiff, negotiated in part and signed in Israel, and primarily required Expolink to perform acts outside the United States. Furthermore, Expolink's contacts with the forum were generated by Plaintiff and ancillary to its role under the contract. Accordingly, the Court finds that it may not exercise in personam jurisdiction over Defendant Expolink.[4]

However, this is not the end of the matter. For each defendant's contacts with the forum must be assessed individually. Calder v. Jones, 465 U.S. 783, 790 (1984). To that end, Defendants Mamlin and Sasson argue that they are not subject to personal jurisdiction in their individual capacities solely based upon their contact with the forum in their corporate capacities. But, the

---

[4]Because Eagle failed to satisfy the more lenient standard necessary to prove specific jurisdiction, the more stringent general jurisdiction analysis is not necessary. ALS Scan, 293 F.3d at 715 ("The threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction.").

relevant inquiry is not whether an individual acted in his corporate capacity or his personal capacity. See id. (noting that defendants' "status as employees does not somehow insulate them from jurisdiction."). Rather, "the controlling issue is simply whether the non-resident defendant, whatever role he may have occupied, had such 'minimum contacts.'" Columbia Briargate Co. v. First Nat'l Bank, 713 F.2d 1052, 1058 (4th Cir. 1983). In this case, Mamlin and Sasson are citizens and residents of Israel. Neither have traveled to Virginia to transact any business with Eagle. Nor do either Mamlin or Sasson own any property here. The only specific contacts asserted by Eagle involve misrepresentations Mamlin and Sasson allegedly made in telephone calls and emails to Plaintiff in Virginia. As already discussed, such communications alone do not form a basis for personal jurisdiction.[5]

Because Plaintiff did not allege constitutionally sufficient contacts with Virginia to subject Defendants Expolink, Mamlin, and Sasson to suit here, the motion to dismiss for lack of personal jurisdiction should be GRANTED.

### III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move the court to dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint; it "'does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses.'" Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (quoting Republican Party v.

---

[5]Eagle seeks further discovery on the nature of Mamlin and Sasson's contacts with Virginia. However, this court is not persuaded that such discovery would be productive. When a plaintiff, as here, offers only speculation or conclusory assertions about contacts with a forum state, the court is within its discretion in denying jurisdictional discovery. Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 402 (4th Cir. 2003).

Martin, 980 F.2d 943, 952 (4th Cir. 1992)). A plaintiff "must sufficiently allege facts to allow the court to infer that all elements of each of his causes of action exist." Jordan v. Alternative Res. Corp., 458 F.3d 332, 344-45 (4th Cir. 2006). In ruling on a motion to dismiss, the Court must accept as true well-pleaded allegations and construe them in favor of the non-moving party. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). Moreover, the Court may only rely upon allegations in the complaint and those documents attached as exhibits. Anheuser-Busch, Inc. v. Schmoke, 63 F.3d 1305, 1312 (4th Cir. 1995).

In this case, Defendants contend that Eagle did not state a valid cause of action under Virginia law, and instead that Eagle's claims are governed by the law of Israel. Even if true, the applicability of Israeli law would not dictate dismissal of this cause of action.[6] For federal courts can properly be called upon to apply the law of a foreign country. Hodson v. A.H. Robins Co., Inc., 528 F. Supp. 809, 823 (E.D.Va. 1981). Further, Eagle's failure to give notice of the possible applicability of Israeli law in its pleadings does not necessitate dismissal. Under Federal Rule of Civil Procedure 44.1, a party who intends to raise an issue concerning foreign law must "give notice in his pleadings or other reasonable written notice." Fed. R. Civ. P. 44.1. This notice requirement "falls considerably short of a requirement that in order to survive a Rule 12(b)(6) motion, a plaintiff must allege the identity and substance of the applicable law." Id. at 824 (quoting Grice v. A/S Ludwig Mowinckels, 477 F. Supp. 365, 376 (S.D.Ala. 1979)). In cases such as this, where the applicability of foreign law is not obvious at the outset and is a matter of contention among the parties, notice may come at "any time sufficient to give the court and the defendants adequate notice

---

[6]Though the applicability of Israeli law would weigh in Defendant's favor should the Court decide a motion to dismiss under the doctrine of *forum non conveniens*. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (internal citations omitted).

of the need to research the foreign rules." Id.

Defendants Mamlin and Sasson also argue that, under the doctrine of corporate immunity, Eagle failed to state a valid cause of action for tortious interference with its business relationships as well as statutory conspiracy in violation of Virginia Code §§ 18.2-499 and 18.2-500. The doctrine of intercorporate immunity recognizes that a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility. Greenville Pub. Co. v. Daily Reflector Inc., 496 F.2d 391, 399 (4th Cir. 1974). However, in Greenville Publishing, the Fourth Circuit determined that the doctrine may be excepted when an agent of the corporation has an "independent personal stake" in achieving the corporation's impermissible objectives. Id. In that case, the court found that the president of the defendant company could conspire with it where he had a financial interest in another company that competed with the plaintiff company and would directly benefit if the plaintiff company was eliminated as a competitor. See id. at 400. Similarly, Eagle alleges in its complaint that Mamlin and Sasson collaborated to divert supply from paper mills in Moldova and Belarus to entities, other than Expolink, in which Mamlin had an interest. See Compl. ¶¶ 21,33. Thus, Plaintiff has pled sufficient facts to satisfy the personal stake exception.

Because Eagle has set forth facts sufficient to support its cause of action, the motion to dismiss for failure to state a claim should be DENIED.

### IV. DISMISSAL BASED ON FORUM NON CONVENIENS

As the Supreme Court recently reaffirmed, "the common-law doctrine of *forum non conveniens* has continuing application in federal courts only in cases where the alternative forum is abroad, and perhaps in the rare instances where a state or territorial court serves litigation convenience best." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 127 S. Ct. 1184, 1190

(2007) (internal citations omitted). The defendant, however, bears a "heavy burden in opposing the plaintiff's chosen forum." Id. at 1191. In assessing whether dismissal based on *forum non conveniens* grounds is appropriate,[7] the court must first determine whether that an alternative forum exists. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981). If an alternate forum is available and adequate, the court must then weigh the familiar private and public interest factors laid out by the Supreme Court in Gulf Oil v. Gilbert, 330 U.S. 501 (1947):

> The factors pertaining to the private interests of the litigants include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate for the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." The public factors bearing on the question included the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening the citizens in an unrelated forum with jury duty.

Piper, 454 U.S. at 241 n.6 (quoting Gulf Oil, 330 U.S. at 508-09). At this stage, the movant continues to bear the burden to "provide enough information to enable the District Court to balance the parties' interests." Id. at 258.

In this case, Defendants claim that Israel offers an available and adequate forum for the parties and that the balance of the public and private interests favor dismissal. In fact, it is unclear that an alternate forum exists. While Defendants rely on a translation of an Israeli statue governing venue, it is not apparent from the face of the statute whether *all parties* can come within that forum's jurisdiction. See Def. Reply Br. Ex. 4; see also Fid. Bank PLC v. N. Fox Shipping N.V., No. 06-

---

[7]A court may consider the doctrine of *forum non conveniens* as a basis for dismissal, without first determining whether it has personal jurisdiction over the defendants. Sinochem, 127 S. Ct. at 1192.

1299, 2007 U.S. App. LEXIS 16793, at * 14 (4th Cir. July 13, 2007) (unpublished op.) (citing In re Air Crash Disaster near New Orleans, 821 F.2d 1147, 1165 (5th Cir. 1987). This Court then is not in a position to rule upon the availability and adequacy of an Israeli forum. In any event, its disposition of Defendants' motion to dismiss for lack of personal jurisdiction removes any need to reach the merits of this issue.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that Defendants' motion to dismiss for lack of personal jurisdiction be GRANTED and Defendants' motion to dismiss for failure to state a claim be DENIED.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(c), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr

v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                                  /s/
                                        Tommy E. Miller
                          UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
November 26, 2007

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Alan D. Albert, Esq.
LeClair Ryan PC
999 Waterside Drive
Suite 2525
Norfolk, VA 23510

Ray Webb King, Esq.
LeClair Ryan PC
999 Waterside Drive
Suite 2525
Norfolk, VA 23510

James E. Kane, Esq.
Gregory Kaplan PLC
1710 E. Franklin Street
Suite 200
Richmond, VA 23223

Karen S. Elliott, Esq.
Gregory Kaplan PLC
1710 E. Franklin Street
Suite 200
Richmond, VA 23223

                                        Fernando Galindo, Clerk

                                By _____
                                        Deputy Clerk

                                        November   , 2007